*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2003 FED App. 0311P (6th Cir.)
File Name: 03a0311p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

———————

UNITED STATES OF AMERICA,
    *Plaintiff-Appellee,*

    *v.*

No. 01-6379

DONALD LYNN BAGGETT,
    *Defendant-Appellant.*

Appeal from the United States District Court
for the Western District of Tennessee at Memphis.
No. 99-20120—Bernice B. Donald, District Judge.

Argued: February 7, 2003

Decided and Filed: August 28, 2003

Before: DAUGHTREY and COLE, Circuit Judges;
SARGUS, District Judge.*

———————

### COUNSEL

**ARGUED:** Needum L. Germany, OFFICE OF THE
FEDERAL PUBLIC DEFENDER FOR THE WESTERN

———————

* The Honorable Edmund A. Sargus, Jr., United States District Judge
for the Southern District of Ohio, sitting by designation.

DISTRICT OF TENNESSEE, Memphis, Tennessee, for
Appellant. Tracy L. Berry, ASSISTANT UNITED STATES
ATTORNEY, Memphis, Tennessee, for Appellee.
**ON BRIEF:** Stephen B. Shankman, OFFICE OF THE
FEDERAL PUBLIC DEFENDER FOR THE WESTERN
DISTRICT OF TENNESSEE, Memphis, Tennessee, for
Appellant. Tracy L. Berry, ASSISTANT UNITED STATES
ATTORNEY, Memphis, Tennessee, for Appellee.

———————

### OPINION

———————

SARGUS, District Judge. Defendant-Appellant Donald
Baggett was convicted by a jury on charges of interstate
domestic violence, in violation of 18 U.S.C. § 2261(a)(2). On
appeal, Baggett asserts that the district court erred in
computing his sentence by improperly applying a six-level
enhancement based on a finding that the victim suffered
permanent or life-threatening bodily injury as defined in
United States Sentencing Guidelines ("U.S.S.G.")
§ 2A2.2(b)(3) and a two-level enhancement for obstruction
of justice under U.S.S.G. § 3C1.1. Although the first issue
involving the degree of injury to the victim presents a
straight-forward question of fact that requires little analysis,
the more important issue in this case is whether conduct that
starts before the commencement of prosecution, but continues
while the prosecution is in progress, can be used to support an
enhancement for obstruction of justice under U.S.S.G.
§ 3C1.1. While we reluctantly hold that pre-investigation
threats to a victim cannot satisfy the temporal element of the
guideline as it is presently structured, we nonetheless affirm
the imposition of the two-level enhancement for obstruction
of justice.

## I.

In May of 1999, Baggett, a professional truck driver, took his wife, Catherine Baggett, on a round trip from Tennessee to California. On May 14, 1999, Mrs. Baggett overheard her husband speaking to another truck driver about the physical characteristics of an attractive female in a pickup truck traveling on the same road. An argument between the Baggetts then ensued and escalated into a violent confrontation during which Appellant grabbed his wife by the hair, "bounced her head off the steering wheel," tore her shirt, and choked her. Baggett then pulled the truck to the side of the road, took his wife into the sleeper portion of the truck, and continued slapping, punching, kicking and choking her. Later in the day, Baggett again assaulted his wife while she remained in the sleeper.

At some point during the trip, Mrs. Baggett testified, Appellant told her that if she "ever tried to get him for domestic violence or assault that he would kill [her] and he would kill [her] baby, too." Early the next morning, Appellant drove the truck to the final destination in Memphis, Tennessee. According to Mrs. Baggett, at the conclusion of the trip, her head was "full of lumps," she could not see or hear, had "bruises everywhere," a split lip, a broken finger and cracked teeth. Patricia Cantrell, the receiving clerk at the Kroger Distribution Center where the trip concluded, testified that Mrs. Baggett was "bruised from head to toe, . . . her knuckles were all bruised up, blue, black. She was – her nose was full of blood, her hair was just all over her head. She was red all over her face. She had red marks around her throat." Mrs. Baggett was subsequently taken to the hospital and received treatment for her injuries, including kidney damage.

As noted in the presentence report, while awaiting trial, Appellant wrote at least 20 letters to his wife. Although the letters contained apologies and affectionate remarks, the missives also expressed concern to Mrs. Baggett that she not have to relive the "nightmare" in court. Baggett also assured

his wife that "he would understand it if she failed to appear in court." The letters included a number of references to Mrs. Baggett's daughter, Erica, the same child Appellant threatened to kill if Mrs. Baggett pursued domestic violence charges against him. Appellant also wrote at least one letter to Erica during his pretrial incarceration. The clear implication, according to the presentence report, is that the letters were sent to Mrs. Baggett in an attempt to discourage her from appearing in court.

## II.

Baggett was originally charged in a two-count indictment, the first count alleging interstate domestic violence, in violation of 18 U.S.C. § 2261(a)(2), and the second kidnapping, in violation of 18 U.S.C. § 1201. The jury returned a verdict of guilty as to the interstate domestic violence count, while acquitting Baggett on the charge of kidnapping.[1]

At sentencing, the district court determined that under U.S.S.G. § 2A6.2, entitled "Stalking or Domestic Violence," a cross-reference was appropriate as directed under subpart (c)(1). The court then applied the guideline for aggravated assault under U.S.S.G. § 2A2.2. The district court also found that Appellant should receive a six-point enhancement because the assault involved permanent or life-threatening bodily injury under U.S.S.G. § 2A2.2(b)(3)(C).

In addition, the district court also found that Baggett engaged in obstruction of justice as recommended by the

---

[1]After both verdicts were returned, the district judge entered a judgment of acquittal on both counts. On appeal, this Court reversed the judgment of acquittal and remanded the case to the district court for reinstatement of the jury's verdict of guilty as to the interstate domestic violence charge. *United States v. Baggett*, 251 F.3d 1087, 1096 (6th Cir. 2001).

presentence report.  The district court thereupon sentenced Appellant to a term of imprisonment of 51 months.

### III.

Baggett first contends that the district court erred in applying a six-level enhancement based upon a determination that the victim suffered permanent or life-threatening bodily injury.  We review findings of fact made by the district court for clear error, while the trial court's interpretation of a sentencing guideline is reviewed *de novo*.  *United States v. Carter*, 283 F.3d 755, 757 (6th Cir. 2002).

The Sentencing Guideline analysis begins with U.S.S.G. § 2A6.2, which specifically references the crime of conviction in this case, interstate domestic violence, 18 U.S.C. § 2261. This guideline also provides that "[i]f the offense involved the commission of another criminal offense, apply the offense guideline from Chapter Two, Part A (Offenses Against the Person) most applicable to that other criminal offense, if the resulting offense level is greater than that determined above." U.S.S.G. § 2A6.2(c)(1).

The district court determined that Appellant's conduct involved an aggravated assault and that the cross-reference therefore applied.  While this determination is not challenged by Baggett, he does contend that under U.S.S.G. § 2A2.2, the district court incorrectly applied a six-level enhancement for the infliction of permanent or life-threatening bodily injury.

Under U.S.S.G. § 2A2.2(b)(3), "[i]f the victim sustained bodily injury, increase the offense level according to the seriousness of the injury:

| Degree of Bodily Injury | Increase in Level |
| --- | --- |
| (C) Permanent or Life-Threatening Bodily Injury | add **6** |

The Sentencing Guidelines further provide a definition of permanent or life-threatening bodily injury in Application Note 1(g), U.S.S.G. § 1B1.1 to include:

injury involving a substantial risk of death; loss or substantial impairment of the function of a bodily member, organ, or mental faculty that is likely to be permanent; or an obvious disfigurement that is likely to be permanent.  In the case of a kidnapping, for example, maltreatment to a life-threatening degree (*e.g.*, by denial of food or medical care) would constitute life-threatening bodily injury.

The district court reviewed the extensive injuries sustained by Mrs. Baggett and emphasized the fractured finger, the cracked tooth and substantial contusions and bruises as depicted in various photographs.  The court also recounted the testimony from the witness at trial that Mrs. Baggett literally crawled into the Kroger Distribution Plant with very visible injuries together with spatial disorientation.  Further, while the district court was not persuaded that Mrs. Baggett's kidney problems were caused by the assault, the court concluded that the combination of the various conditions together with severe bleeding, bruising and broken bones could reasonably be viewed as amounting to a life-threatening bodily injury.

As we have held, "'where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous.'" *Pledger v. United States*, 236 F.3d 315, 320-21 (6th Cir. 2000) (*quoting Anderson v. City of Bessemer City*, 470 U.S. 564, 567 (1985)).  The analysis here is highly fact specific.  As noted in *United States v. Hamm*, 13 F.3d 1126, 1128 (7th Cir. 1994), "the district court is by far best-suited to assess that myriad of factors observable in hearing the evidence presented."

We conclude that the finding by the district court that Baggett inflicted permanent or life-threatening bodily injury to the victim was not clearly erroneous.

## IV.

Baggett also contends that the district court erred in assessing a two-point enhancement for obstruction of justice under U.S.S.G. § 3C1.1. As we have recently explained, a district court's imposition of an enhancement for obstruction of justice is reviewed under a trifurcated standard. *United States v. Camejo*, 333 F.3d 669, 674-75 (6th Cir. 2003). First, we review the factual determinations made by the district court for clear error. *Id.* at 675 (citing *United States v. McDonald*, 165 F.3d 1032, 1033-34 (6th Cir. 1999)). Second, the determination that certain conduct constitutes obstruction of justice, which is a mixed question of law and fact, is reviewed *de novo*. *Id.* Third, because the application of the obstruction enhancement is non-discretionary, the actual imposition of the enhancement is reviewed *de novo*. *Id.*

At the sentencing hearing, the prosecution argued that there were two separate bases for applying the obstruction of justice enhancement. First, the prosecution contended that the letters written by Baggett to his wife and stepdaughter were intended to encourage her not to appear at the trial. In addition, the Government also argued that Baggett's threat to kill Mrs. Baggett and her child if she attempted to charge him with domestic violence amounted to tampering with the witness.

The district court rejected the Government's argument that the letters written by Baggett amounted to obstruction of justice. However, the court found that the threats communicated to Mrs. Baggett, before Appellant was under investigation for interstate domestic violence, constituted obstruction of justice.

A common sense approach to the issue would dictate that a defendant's threat to kill a victim if she reported him to law

enforcement authorities constitutes obstruction of justice. The guideline at issue is not so straightforward. Section 3C1.1 provides as follows:

> If (A) the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice *during the course of the investigation, prosecution, or sentencing of the instant offense of conviction*, and (B) the obstructive conduct related to (i) the defendant's offense of conviction and any relevant conduct; or (ii) a closely related offense, increase the offense level by **2** levels.

U.S.S.G. § 3C1.1 (emphasis added).

The literal language of Section 3C1.1 requires that a defendant engage in obstruction of justice "during the course of the investigation, prosecution, or sentencing of the instant offense of conviction." Consequently, a defendant who engages in obstructive conduct prior to the investigation, prosecution, or sentencing of the instant offense is not subject to the enhancement.

This result is not unintended. In 1998, in Amendment 581, the United States Sentencing Commission modified the language found in Section 3C1.1 to clarify that the term "instant offense" refers either to the defendant's offense of conviction or to a closely-related case. The amendment further clarified what the Commission termed "the temporal element of the obstruction guideline (*i.e.*, that the obstructive conduct must occur during the investigation, prosecution, or sentencing of the defendant's offense of conviction)." The Commission also added Application Note 1 which states as follows:

> This adjustment applies if the defendant's obstructive conduct (A) occurred during the course of the investigation, prosecution, or sentencing of the defendant's instant offense of conviction, and (B) related

to (i) the defendant's offense of conviction and any relevant conduct; or (ii) an otherwise closely related case, such as that of a co-defendant.

Following the Amendment, this Circuit has adhered to the requirement that the enhancement for obstruction of justice may only be imposed if the defendant engaged in obstructive conduct "with knowledge that he or she is the subject of an investigation or with the 'correct belief' that an investigation is 'probably underway.'" *United States v. Brown*, 237 F.3d 625, 628 (6th Cir. 2001) (citations omitted). Similarly, in *United States v. Boyd*, 312 F.3d 213, 217 (6th Cir. 2002), we reaffirmed the requirement that a defendant have knowledge of an investigation before the obstruction of justice enhancement may be imposed. It is axiomatic that we must now follow the circuit precedent. Sixth Cir. Internal Operating P. [Admin. R.] 206(c); *United States v. Washington*, 127 F.3d 510, 517 (6th Cir. 1997).

Applying this strictly temporal analysis, we are forced to conclude that the obstruction enhancement cannot be sustained on the basis articulated by the district court because Baggett did not threaten to kill his wife and her daughter "during the course of the investigation, prosecution, or sentencing of the defendant's instant offense of conviction . . . or . . . [in] an otherwise closely related case, such as that of a co-defendant." We reach this conclusion reluctantly, however, because it seems counter-intuitive to say that threats made by a defendant to prevent a victim from reporting conduct that later results in a conviction do not constitute obstruction of justice. In this case, Appellant clearly acted to prevent the actual investigation and prosecution of the offense of conviction. It is difficult to imagine a more compelling set of circumstances upon which the enhancement for obstruction of justice should apply.

Nevertheless, we also recognize that the Sentencing Commission was correctly concerned that an expansive interpretation of U.S.S.G. § 3C1.1 could result in an

obstruction enhancement for conduct not directly related to the offense of conviction. The temporal requirement serves to require, at least in an indirect sense, a nexus between the acts of obstruction and the crime of conviction. With no causal link to the crime of conviction, obstructive conduct could conceivably include acts wholly unrelated to the crime of conviction or conduct that should have been the subject of separate criminal charges. As this case demonstrates, however, in at least some cases, a defendant may clearly obstruct justice with regard to the offense of conviction through conduct occurring before the commencement of an investigation or prosecution. Here, a causal link between the crime of conviction and the obstructive conduct is clearly present. A compelling argument can be made that the enhancement should apply as to acts designed to actually *prevent* investigation or prosecution as to the crime of conviction.[2]

Although we must hold that the threats made by Baggett to his wife while she remained in his tractor-trailer cannot support the obstruction enhancement, we further conclude that the record contains more than sufficient facts to establish obstructive conduct occurring after the investigation and prosecution began. While in custody and awaiting trial, Baggett sent no fewer than 20 letters to his wife and one to his stepdaughter. We agree with the conclusion in the presentence report that these letters, which contained numerous references to Baggett's stepdaughter, the same child he threatened to kill if Mrs. Baggett went to the authorities, were attempts to discourage Mrs. Baggett from appearing in court. Further, these letters, which followed upon the original threat to kill Mrs. Baggett if she went to the

---

[2]Prior to the 1998 Amendments, the Court of Appeals for the Seventh Circuit in *United States v. Lallemand*, 989 F.2d 936, 938 (7th Cir. 1993), noted that obstructive behavior can begin prior to an investigation. As an example, the court noted the following scenerio: "Suppose the defendant had told [a third party] that in the event the victim went to the authorities [the third party] was to kill the victim and any other witnesses." *Id.*

police, represent a continuum of conduct designed to obstruct justice. The letter-writing continued long after Baggett's arrest on charges leading to the offense of conviction.

We therefore sustain the imposition of the enhancement for obstruction of justice on grounds other than those adopted by the district court, as permitted by *United States v. Bonds*, 12 F.3d 540, 557 (6th Cir. 1994), based upon a continuum of obstructive conduct, beginning with the Appellant's threat to kill his wife if she reported his crimes to authorities and concluding with the subsequent letters written to her and her stepdaughter while he was awaiting trial on these charges.

## V.

Based upon the foregoing, the sentence imposed by the district court is **AFFIRMED**.